**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Kip Green,** | ) | **CASE NO. 1:20 CV 2872** |
| *on behalf of himself and all others* | ) | |
| *similarly situated,* | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Verita Telecommunications Corp.,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| | ) | |
| Defendant. | ) | |

<u>**INTRODUCTION**</u>

This matter is before the Court upon plaintiff's Motion for Conditional Certification, Expedited Opt-In Discovery, and Court Supervised Noticed to Potential Opt-In Plaintiffs (Doc. 16).  This case arises out of the Fair Labor Standards Act ("FLSA").  For the reasons that follow, plaintiff's Motion for Conditional Certification, Expedited Opt-In Discovery, and Court Supervised Notice to Potential Opt-In Plaintiffs is GRANTED IN PART and DENIED IN PART.

1

**FACTS**

Plaintiff, Kip Green, filed this lawsuit, on behalf of himself and all others similarly situated, against defendant Verita Telecommunications Corporation ("Verita"), asserting overtime violations under the FLSA.

Verita is a telecommunications contractor which installs communication lines for cable and internet commercial customers.  Plaintiff was employed by Verita for approximately seven months, from February to August 2019.  He was an aerial lineman and underground cable layer. He was non-exempt and paid hourly.

According to the Complaint, plaintiff and other similarly situated employees were only paid for work performed between their scheduled start and stop times.  They were not paid for work performed before and after their scheduled start and stop times or work performed during their designated lunch period.  Lunch periods were automatically deducted from their pay.

This unpaid work included: (1) "getting tools, equipment, and/or paperwork necessary to perform their work relating to the installation and/or maintenance of communications lines;" (2) "putting away tools, equipment, machines and/or paperwork necessary to perform work related to the installation and/or maintenance of communication lines;" and (3) "performing work relating to the installation and/or maintenance of communications lines."  The Complaint alleges that the amount of time plaintiff and other similarly situated employees spent on this work amounted to approximately 30-60 minutes each day.  Plaintiff estimates that he was not compensated for "approximately five hours per week."

In addition to the Complaint, plaintiff  submitted his own declaration as well as those of eight opt-in plaintiffs.  Plaintiff's declaration states that he was employed by Verita as an aerial

lineman, crew leader, and ground man.  Similar to the Complaint, plaintiff states that he was only paid for work performed between his scheduled start and stop times.  He was not compensated for work performed outside his scheduled shift or during his scheduled lunch.  Lunches were automatically deducted from his pay, regardless of whether or not he took a lunch.  This unpaid work included getting and putting away tools, machines, and paperwork necessary to perform his work relating to the installation of communications lines.  Plaintiff avers that Verita required him to perform this work before and after his shift and during his lunch break.  He asserts that as a result of this policy, he was not compensated for all the time he worked, including all of the overtime hours he worked.  Plaintiff avers that he observed other employees being subject to this same timekeeping practice.

Opt-in plaintiff Codie Green submitted a declaration stating that he was employed by Verita as an aerial lineman.  Like plaintiff, he states that he was not paid for the time he spent working before and after his scheduled shift or during his designated lunch period.  He asserts this work included getting and putting away tools, equipment, and paperwork necessary to perform his work relating to the installation of communications lines.  He avers that this resulted him not being compensated for all the time he worked, including all of the overtime hours he worked.  Opt-in plaintiffs Nathan A. Green, Zachiriah Knestaut, Benjamin W. Newsome, Jr., Derek Stringer, James Swain, Cyler Wright, and Craig Beatty Lillie submitted identical declarations, though their job titles varied.  Nathan A. Green and Knestaut were aerial lineman foremen, Newsome and Swain were groundhands, Stringer was a lineman, Wright was a technician, and Lillie was a lineman foreman.

Plaintiff moves to conditionally certify a class consisting of:

3

> All current and former hourly employees who were employed by
> Defendant in the field who were not paid overtime compensation at a rate
> of time and a half of their regular rate of pay for the hours they worked
> over 40 each workwork for the period of December 31, 2017 to the
> present.

Plaintiff also moves the Court for court-supervised notice and expedited opt-in discovery.

Defendant opposes the motion in its entirety.

### **STANDARD OF REVIEW**

An employee may sue for violations of the FLSA on his or her own behalf and as a

representative plaintiff on behalf of similarly situated employees.  29 U.S.C. § 216(b).  The

similarly situated employees must opt-in by "giv [ing] [their] consent in writing to become such

...part[ies] and such consent [must be] filed in the court in which such action is brought."  *Id.*

This type of suit is called a "collective action."  A district court may, in its discretion, facilitate

notice of the collective action to potential opt-in plaintiffs to efficiently adjudicate the FLSA

collective action.  *See Hoffman-La Rouche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Before deciding whether an action may proceed as a collective action, a court must

determine whether the prospective opt-in plaintiffs are similarly situated.  *Comer v. Wal-Mart

Stores, Inc*., 454 F.3d 544, 546-47 (6th Cir. 2006).  Courts generally use a two-stage approach to

determine this issue.  *Id*.  *See also Murton v. Measurecomp, LLC*, 2008 WL 5725631, *2 (N.D.

Ohio 2008).  In the first stage, which takes place at the beginning of discovery, courts require

only a "modest factual showing" that the plaintiff's position is similar to that of other employees.

*Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D.

Ohio 2002)).  This is a "fairly lenient" standard and "typically results in 'conditional

certification' of a representative class.'"  *Id.* at 547 (internal citations omitted).  At the notice

4

stage, a district court does not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues.  *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (N.D. Ohio 2011).

During the second stage, the court makes a final determination on whether opt-in class members are similarly situated based upon a thorough review of the record after discovery is completed.  *Schwab v. Bernard*, 2012 WL 1067074, *2 (N.D. Ohio 2012).  This final certification decision is normally based on a variety of factors, including "factual and employment settings of the individual[] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action."  *O'Brien v. Ed Donnelly Enters., Inc*., 575 F.3d 567, 584 (6th Cir. 2009), *abrogated in part on other grounds, Consumer Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663 (2016) (internal citations omitted).

**ANALYSIS**

**A.     Motion for Conditional Certification**

Plaintiff asserts that he has met the fairly lenient burden for conditional certification.  He argues that he has provided evidence that the proposed class is similarly situated because they "were not paid for work performed before and after their scheduled start and stop times, and for work performed during a designated lunch period."  Plaintiff asserts that this practice by Verita resulted in FLSA overtime violations for all hourly employees working in the field nationwide.

Defendant argues that conditional certification should be denied because plaintiff's proposed class is overly broad.  Defendant presents evidence that there are approximately 14 different hourly positions that work "in the field" at Verita.  Defendant reasons that because each

position has different duties, responsibilities, and tools, plaintiff has not shown that the proposed class is similarly situated and unified under a common theory of liability.

Upon review, the Court finds that plaintiff satisfies the fairly lenient burden required for conditional certification.  Although plaintiff's allegations and declarations are quite bare-bones, especially regarding job duties, he has done enough to show that he is similarly situated to other members of the proposed class.  Specifically, plaintiff and the eight opt-in plaintiffs provided declarations in which they all aver that they (1) were only paid for work performed during their scheduled shift times; (2) were required to perform work before and after their scheduled shift times for which they were not paid; (3) had lunch breaks automatically deducted from their pay, regardless of whether or not a lunch break was taken; and (4) were not compensated for all of the time that they worked, including overtime hours, as a result of these policies and practices.  In addition, these nine individuals all attest that they observed defendant require the same of other employees.  Theses nine declarations, together with the allegations contained in the Complaint, are sufficient to meet plaintiff's modest burden of showing that employees in the field at Verita are similarly situated.

Defendant makes the argument that different types of employees in the field have different tools and, therefore, cannot be similarly situated.  However, the Sixth Circuit has recognized that proposed class members are similarly situated if they can show that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of those theories are individualized and distinct." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds, Consumer Campbell Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016).  Here, regardless of the various tools that these employees used, the

declarations demonstrate that the proposed class is unified by a common theory – defendant did

not pay employees in the field for work which occurred outside the hours of their scheduled

shift.  Plaintiff also shows that the proposed class is unified by defendant's practice of

automatically deducting a lunch period.  There is no indication that these timekeeping policies

varied based on an employee's job title or tools.

Ultimately, defendant's arguments regarding the variety of job duties and tools relate to

the "factual and employment settings of the individual plaintiffs" and "the different defenses to

which the plaintiffs may be subject on an individual basis."  *O'Brien,* 575 F.3d at 585.  However,

these are the types of factors district courts use in "their final-certification decisions."  *Id.*  At

this stage of the litigation, it generally does not matter "if the employees held different job

titles." *Lawrence v. Maxim Healthcare Servs., Inc.*, 2013 WL 5566668, *2 (N.D. Ohio Oct. 9,

2013) (citing *O'Brien,* 575 F.3d at 585).[1]

Defendant also argues that conditional certification is inappropriate because plaintiff has

not shown that all members of the proposed class are subject to a "single, FLSA-violating

policy."  However, such a showing is not required under the lenient standard for conditional

certification.  *Houston v. Progressive Casualty Ins. Co.*, 2015 WL 8527339, *2 (N.D. Ohio

---

[1]     Defendant cites two decisions from this Court in support of its argument that
plaintiff needs to show that the proposed class has similar job duties at the
conditional certification stage: *Duncan-Watts v. Nestle USA, Inc*, 2020 WL
589041 (2020) and *Mitcheff v. Invacare Corp.,* 2007 WL 9770919 (2007).
However, in both cases, the plaintiff's FLSA violation theory hinged upon the
proposed class's job duties.  For example, in *Mitcheff,* the FLSA violation was
based on the allegation that three different types of positions should be classified
as non-exempt.  Similarly, in *Duncan-Watts*, the plaintiff's FLSA overtime
violation theory hinged upon whether or not "donning and doffing" of certain
protective equipment was "integral and indispensable" to an employee's job
duties.  This is not the case here.

2015).  *See also O'Brien*, 575 F.3d at 584-585 (holding that a common plan or policy that violates the FLSA need not be shown even at the final stage of certification).  Plaintiff only needs to show that he is similarly situated to the proposed class, which he has done.  Moreover, even if such a requirement existed, plaintiff alleges that defendant had a timekeeping policy of not paying employees in the field for time spent working either before or after scheduled shifts or during meal periods.  Plaintiff has provided declarations from eight different employees in the field which contain the same allegations.[2]

Defendant also argues that plaintiff has not identified a sufficient number of potential class members.  The Court disagrees.  Plaintiff has provided eight declarations of former Verita employees who also believe that Verita did not properly compensate them for all hours they worked.  Each of these employees attest that they observed Verita engage in this same timekeeping practice with other employees.  Courts within this Circuit have routinely granted conditional certification based on fewer declarations.  *See Jackson v. Papa John's USA, Inc.*, 2009 WL 385580, *3 (N.D. Ohio 2009) (court granted conditional certification based on plaintiff's declaration, declarations of two putative opt-in plaintiffs, a description of job duties, and training program documents for a class estimated at around 1000 persons); *McNelley v. Aldi, Inc.*, 2009 WL 7630236, *3-4 (N.D. Ohio 2009) (court granted conditional certification based on seven declarations of former employees); *Bauer v. Transtar Industries, Inc.*, 2016 WL 1408830,

---

[2]     The Court notes that defendant has presented evidence that plaintiff was paid overtime compensation during his time at Verita.  Defendant argues that this establishes that plaintiff does not have a viable claim against Verita.  This plainly goes to the merits of plaintiff's FLSA claim.  Accordingly, the Court will not consider this issue at the conditional certification stage.  *See Murton v. Measurecomp, LLC*, 2008 WL 5725631, *5 (N.D. Ohio 2008) ("It is well-settled that no merits-based inquiry is appropriate at this stage.")

*2-3 (N.D. Ohio 2016) (conditional certification based on three declarations); *Roberts v. J.R.*
*Engineering, Inc.*, 2019 WL 5653340, *6-7 (N.D. Ohio 2019) (conditional certification based on
three declarations).  Defendant has not cited to any authority requiring a minimum number of
declarations, nor would such a requirement be appropriate given that the parties have not yet
engaged in discovery to identify the class members.

Finally, defendant suggests that conditional certification should be denied because this
Court lacks specific personal jurisdiction with respect to any claims brought by opt-in plaintiffs
who do not live or work in Ohio.[3]  Defendant contends that a "court cannot exercise personal
jurisdiction over FLSA claims by out-of-state plaintiffs who are pursuing claims based on
conduct that occurred somewhere else."

Plaintiff contends that "the issue of whether this Court has jurisdiction over non-Ohio
residents [in an FLSA collective action] is far from settled."  Plaintiff argues that such an
argument would be more appropriately addressed in a motion to dismiss rather than in response
to a motion for conditional certification.

Upon review, the Court agrees with plaintiff.  In *Bristol-Myers Squibb Co. v. Superior*
*Court of California*, 137 S.Ct. 1773 (2017), the Supreme Court held that a California state court
could not exercise specific personal jurisdiction over claims brought by out-of-state plaintiffs in
a mass tort action.  *Id.* at 1777-1778.  The Supreme Court found that since there was no general
jurisdiction over the defendant, and the conduct giving rise to the claims did not occur in
California, the state court needed to establish personal jurisdiction for each individual plaintiff in

---

[3]     Defendant asserts that this Court does not have general jurisdiction over Verita.
Plaintiff does not dispute this or provide any argument to the contrary.

9

the mass tort action. *Id.* However, whether or not this precedent applies to FLSA collective actions is not settled. District courts from across the country are divided on this issue. *Compare O'Quinn v. TransCanada USA Services, Inc.,* 469 F.Supp3d 591, 614 (S.D. WV 2020) ("So long as the named plaintiff in an FLSA action was injured in the forum state by the defendant's conduct then the 'suit' arises out of or relates to the defendant's contacts with the forum"); *Waters v. Day & Zimmerman NPS, Inc.*, 464 F.Supp.3d 455, 461 (D. Mass 2020) ("Extending *BMS* to the FLSA context would contravene the explicit intent of Congress in enacting the FLSA"); *Hammond v. Floor & Decor Outlets of Am., Inc.*, 2020 WL 2473717, at *15 (M.D. Tenn. 2020) ("The court concludes that the holding in *BMS* does not extend to cases such as this one, involving an FLSA collective action filed in federal courts . . ."); *with Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845, 849–50 (N.D. Ohio 2018) ("*Bristol-Myers* applies to FLSA [collective action] claims, in that it divests [Ohio's federal] courts of specific jurisdiction over the FLSA claims of non-Ohio [putative class members] against [non-Ohio defendants]."); *Hutt v. Greenix Pest Control, LLC*, 2020 WL 6892013, at *8 (S.D. Ohio 2020). Moreover, though not acknowledged by either party, this exact issue is currently under review by the Sixth Circuit in *Canaday v. The Anthem Cos., Inc.*, No. 20-5947 (6th Cir. August 19, 2020).

Several district courts, including one in this circuit, have declined to consider this issue at the conditional certification stage. These courts reason that deciding whether jurisdiction exists over individuals who not yet parties is inappropriate. *Knecht v. C&W Facility Services, Inc.*, 2021 WL 1572795, *4 (S.D. Ohio 2021) (declining to consider personal jurisdiction at the conditional certification stage, noting that it is "unclear whether any out-of-state opt-ins will even join the suit"); *Warren v. MBI Energy Servs., Inc.*, 2020 WL 5640617, at *2 (D. Colo.

10

2020) (addressing the application of *Bristol-Myers* at the conditional certification stage "puts the proverbial cart before the horse"); *Belt v. P.F. Chang's China Bistro, Inc.,* 2020 WL 3829026, at *7–8 (E.D. Pa. 2020) ("[T]he Court cannot decide whether it has jurisdiction over individuals who have not yet opted-in because they are not parties to the collective action").

The Court finds this approach to be consistent with how jurisdictional disputes are normally handled.  "Defendants generally cannot preemptively prevent a party from joining a suit due to lack of jurisdiction; they must wait until the party attempts to join, then move for dismissal." *Knecht*, 2021 WL 1572795, *4.  The Court therefore declines to consider the issue of personal jurisdiction at this stage of the proceedings.

Accordingly, the Court GRANTS plaintiff's Motion for Conditional Certification.

**B.      Motion for Court-Supervised Notice to Potential Opt-In Plaintiffs**

Plaintiff also moves for court-supervised notice to potential opt-in plaintiffs. Specifically, plaintiff requests that the Court: (1) approve the proposed notice and consent form; (2) approve the proposed text message; (3) order defendant to produce an Excel Spreadsheet containing the name, last known home address, last known cellular phone number, last known email address, and employment dates of all individuals that worked at Verita as linemen and underground cable layers within fourteen days of this Order; and (4) allow plaintiff to disseminate this proposed notice and consent form via U.S. Mail and text to all putative class members within 14 days of receiving defendant's spreadsheet.  Defendant objects to several aspects of the proposed notice and notice procedure.  The Court will address each objection in turn.

*1.      Content of Proposed Notice and Consent Form*

11

District courts have broad discretion over the content of FLSA collective action notice. *McGrew v. VCG Holding Corp.,* 735 Fed.Appx 210 (Mem) (6th Cir. 2018) (citing *Hoffman-La Rouche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).  However, courts should take steps to ensure that the notice is "timely, accurate, and informative," permits potential opt-in plaintiffs to "make informed decisions about whether to participate," and "avoid[s] even the appearance of judicial endorsement of the merits of the action."  *Hoffman-La Roche* at 170-174.  A court must be careful that a notice's content does not encourage potential opt-in plaintiffs to join or suggest an approval of the merits of the suit.  *Id.* at 174.

At the outset, the Court finds that several of defendant's objections regarding plaintiff's proposed notice are well-taken.  Accordingly, the Court orders the parties to submit a joint revised proposed notice and consent form consistent with the findings expressed below.

Defendant first objects to the following language contained in the proposed notice:

> Plaintiff alleges that Verita violated the FLSA by failing to pay Plaintiff and other similarly situated employees who worked in the field overtime compensation at the rate of one and one-half times their regular rate of pay for all hours works over 40 in a workweek.

Defendant argues this language is "confusing and misleading" because "all field" employees is overly broad and plaintiff was paid overtime compensation during his time at Verita.  However, for the reasons discussed above, the Court rejects both of these arguments at the conditional certification stage.

Defendant also argues that the proposed notice "does not properly reflect its position in this matter."  Plaintiff notes that the proposed notice provides that "Verita has denied these claims and believes it has properly paid employees."  Defendant asserts that this is an "oversimplification of" its position.  However, defendant does not provide any specific language

12

it believes would better reflect its position.  Regardless, given that the Court is ordering the parties to submit a joint revised proposed notice, the Court sees no harm in allowing the parties to agree to language that would better reflect defendant's position.

Defendant next argues that the proposed notice "gives the false impression that this Court is endorsing this litigation."  Defendant argues that the proposed notice's disclaimer indicating "that the Court takes no position on the merits of the case" appears "too late in the notice."

Upon review, the Court finds that the disclaimers contained within plaintiff's proposed notice are satisfactory.  Indeed, plaintiff's proposed notice contains two disclaimers that this Court has taken no position on the merits of the case.  One of these disclaimers, which is in bold and all caps, provides:

> **PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.  THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFFS' CLAIMS OR OF VERITA'S DEFENSES**.

The Court finds such a disclaimer is more than sufficient to alert any potential opt-in plaintiffs that this litigation is not endorsed by the Court.

Defendant next argues that the proposed notice is deficient because it does not inform potential opt-in plaintiffs that they may be liable for its "fees and expenses."  Plaintiff argues that including this type of language may "dissuade participation in the case" and should not be included in the notice.

Upon review, the Court agrees with defendant.  The proposed notice, as currently written, provides that "you will not be responsible for any costs."  While this is in reference to plaintiff's counsel, the Court agrees with defendant that this language is misleading.  Including a short statement that plaintiffs possibly may be liable for a portion of defendant's costs will provide

13

"putative members with a more complete understanding of the litigation that they are considering opting into." *Pop*, 2019 WL 4154480 at *4. *See also Gomez v. ERMC Prop. Mgmt. Co., LLC*, 2014 WL 3053210, at *2 (N.D. Ohio 2014) (finding such language appropriate because it gives "prospective plaintiffs a clear understanding of the potential risks and rewards of opting into this litigation"); *Kilmer v. Burntwood Tavern Holdings, LLC*, 2020 WL 2043335, *3 (N.D. Ohio 2020) (same).  However, the Court cautions the parties that the notice language must "clearly indicate that costs does not include attorney fees." *Pop,* 2019 WL 4154480 at *4. *See Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994) (holding that defendants may not recover attorney's fees in defending FLSA actions).

Defendant also argues that the notice should contain language advising potential opt-ins that they may no longer be party plaintiffs in the suit if the Court decertifies this action.  Plaintiff does not appear to have any objection to this request.  The Court has no issue with the notice containing a sentence to this effect.

Defendant also requests that the notice contain language that potential opt-ins may need to participate in the litigation of their claims.  Plaintiff does not object to this request and the Court finds it to be reasonable.  However, the Court finds a short statement is all that is required in order to avoid dissuading participation in the case.  *See, e.g. Rodkey v. Harry & David, LLC,* 2017 WL 2463392, at *6 (S.D. Ohio 2017) (ordering notice to include the following language: "While the suit is proceeding, you may be required to provide information, sit for depositions, and testify in court."); *Ganci v. MBF Inspection Services, Inc.,* 2016 WL 5104891, at *7 (S.D. Ohio 2016) ("[T]he notice shall include a short statement that opt-in plaintiffs may be required to participate in written discovery and that they may be required to appear for deposition and/or

14

trial.")

Accordingly, plaintiff's request for court-supervised notice is GRANTED.  However, the Court does not approve the notice and consent form as currently drafted.  The Court ORDERS the parties to jointly file a revised proposed notice and consent form consistent with the above-noted revisions.

2.      *Method of Distributing Notice*

Plaintiff seeks distribution of the proposed notice and consent form via U.S. mail and text message.  According to plaintiff, notice via text message is "reasonable and necessary" and an "emerging trend" among other district courts.

Defendant objects to distribution of the notice via text message.  According to defendant, notice via text is an invasion of privacy and "outweighs any convenience or minimal increase in effectiveness of notice that might occur as a result of notification in that manner."

Courts have broad "discretion in deciding how notice is disseminated."  *Staggs v. Fuyao Glass Am., Inc.*, 2018 WL 840178, *2 (S.D. Ohio 2018).  Courts should ensure that the type of notice provided will "reach the potential opt-in plaintiffs while maintaining the privacy of the not-as-yet parties to the case."  *Brandenberg v. Cousin Vinny's Pizza*, LLC, 2017 WL 3500411, *5 (S.D. Ohio 2017).  *See also Cowan v. Nationwide Mut. Ins. Co.*, 2019 WL 4667497, *11 (S.D. Ohio 2019) ("The Court is mindful of the need to balance affording putative class the opportunity to participate in the collective action while not badgering them to do so.")

Upon review, the Court denies plaintiff's request to send notice via text message.

Instead, the Court will allow plaintiff to provide notice via U.S. mail and email.[4]  This will ensure that putative class members will receive notice of the suit by at least one method.  It will also obviate any concerns regarding inaccurate residential addresses or delays in mail service. *Bradenberg*, 2017 WL 3500411, *5 ("Electronic mail is an inexpensive, non-invasive, effective way to ensure that notice is received in a timely manner.")  This is also in line with the type of notice approved by district courts throughout this circuit.  *Andrews v. Producers Service Corporation*, 2020 WL 4434865, *5 (S.D. Ohio 2020) (denying request for notice via text, allowing first-class mail and email); *Anderson v. Minacs Group (USA), Inc.*, 2017 WL 1856276, *9 (E.D. Mich 2017) (same); *Foster v. Sitel Operating Corporation*, 2020 WL 3485576, *6 (M.D. Tenn 2020).

The Court acknowledges that some district courts have allowed notice via text message. However, in these cases, the plaintiff usually made some sort of showing that notice via text was necessary under the particular circumstances of that case.  *Thomas v. Papa John's International, Inc.,* 2019 WL 4743637, *5 (S.D. Ohio 2019) ("Including a third method of texting putative class members, however, has not been allowed unless the named plaintiff can show that notice via postal and electronic mail is insufficient as to a given potential member.")  Here, plaintiff wholly fails to provide any argument as to why notice via text is required here.  Accordingly, the Court finds that notice via U.S. mail and email is appropriate.[5]

---

[4]      The Court notes that plaintiff does not request to provide notice via email. However, plaintiff has requested that defendant provide him with the email addresses of putative class members.  Defendant has not objected to providing these email addresses.

[5]      Since the Court is denying plaintiff's request for notice via text message, it need not approve plaintiff's proposed text message.

16

### 3. Roster of Putative Class Members

Plaintiff also requests an order requiring defendant to produce an Excel spreadsheet of the putative class members' names, last known home address, last known cellular phone number, last known email address, and employment dates.  Plaintiff requests that defendant provide this information within fourteen days of this Order, noting that the statute of limitations is not tolled for these potential opt-in class members.  Defendant objects to providing cellular telephone numbers and argues that 30 days would be a more appropriate time frame for them to provide all this data.

As discussed above, the Court is not permitting plaintiff to send notice to any potential class members via text.  Accordingly, plaintiff's request for cellular telephone numbers would be "unnecessarily intrusive to the privacy rights of [the putative class members] at this juncture." *Cowan*, 2019 WL 4667497 at *12.  Plaintiff's request for cellular telephone numbers is denied.

Moreover, while the Court appreciates plaintiff's statute of limitations concerns, plaintiff is seeking to certify a nationwide class which encompasses several different job positions within Verita.  This will likely result in defendant needing to compile the contact information of a large number of potential class members.  As such, the Court finds plaintiff's request to have defendant produce all this data within 14 days to be unreasonable.[6]

Accordingly, the Court orders defendant to provide to plaintiff's counsel with an Excel spreadsheet of the putative class members' names, last known addresses, last known email addresses, and employment dates within 30 days of the date of this Order.

---

[6]     Because the Court is not approving the notice as currently proposed, plaintiff's request that he be permitted to send notice to the putative class members within 14 days of receiving this spreadsheet is likewise denied.

17

4.    *Length of Opt-In Period*

Defendant also argues that the forty-five day opt-in period contained in the proposed notice and consent form is too long.  Defendant proposes a thirty day opt-in period instead.  Plaintiff argues that the proposed forty-five day opt-in period is appropriate, given the delays in mail service in recent years.

Upon review, the Court agrees with plaintiff.  Courts throughout this circuit have recognized that the COVID-19 pandemic has significantly impacted mail service.  *See, e.g., Headspeth v. TPUSA, Inc.*, 2020 WL 4577491, at *1 (S.D. Ohio 2020); *Cook v. Brewster Cheese*, 2020 WL 5891904, (N.D. Ohio 2020).  Moreover, courts routinely permitted a forty-five day opt-in period even prior to the pandemic.  *Beetler v. Trans-Foam, Inc*., 2011 WL 6130805, at *5 (N.D. Ohio 2011) (finding that a forty-five day opt-in period both prevented a delay in the litigation and allowed potential plaintiffs time to fully consider their options); *Snide v. Disc. Drug Mart, Inc*., 2011 WL 5434016, at *8 (N.D. Ohio 2011), *report and recommendation adopted*, 2011 WL 5452153 (N.D. Ohio 2011).  Accordingly, the Court shall permit a 45-day opt-in period.

## **CONCLUSION**

For the foregoing reasons, plaintiff's Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs is GRANTED IN PART and DENIED IN PART.

The Court GRANTS conditional certification of plaintiff's proposed collective action:

All current and former hourly employees who were employed by Defendant in the field who were not paid overtime compensation at a rate of time and a half of their regular rate of pay for the hours they worked over 40 each workweek for the period of December 31, 2017 to the present.

18

The Court DENIES plaintiff's request for expedited opt-in discovery.  However, the Court ORDERS defendant to provide to plaintiff's counsel with an Excel spreadsheet of the putative class members' names, last known addresses, last known email addresses, and employment dates within 30 days of the date of this Order.

The Court GRANTS plaintiff's request for supervised notice, but DENIES the notice as proposed. In light of this Order, the parties shall jointly file a revised proposed notice and consent form complying with this ruling within 10 days of the date of this Order.

IT IS SO ORDERED.

   /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated:  6/2/21

19